[Crim. No. 5899.    Second Dist., Div. Two.    Sept. 27, 1957.]

THE PEOPLE, Respondent, v. LLOYD ELI OLDS, Appellant.

David C. Marcus for Appellant.

Edmund G. Brown, Attorney General, and James Maupin, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was convicted of violating section 286, Penal Code. He appeals from the order denying his motion to dismiss under section 1203.4, Penal Code, and from the judgment.[1]

At approximately 10 p. m. on March 9, 1954,[2] Ronald, aged 15, was standing on a street corner in Long Beach, "leaning against the bus sign," when defendant drove up and inquired whether he "would like a ride." Ronald accepted the invitation. After driving around the area for a little while defendant produced a half pint bottle of bourbon that was two-thirds full and two cans of beer. While continuing their driving, defendant and Ronald consumed the bourbon and beer. At about 11 o'clock they decided to replenish their supply and so stopped for that purpose near a liquor store on Long Beach Boulevard in North Long Beach. Defendant told Ronald to get out of the car and walk down to the middle of the block while he got the "booze" so that no one would see a minor in the car when he came out with it. Defendant picked Ronald up and inquired "if there was a nice place to go . . . with no police." Ronald suggested a place to which they drove and parked. There they proceeded to consume the liquor defendant had just purchased. While they were sitting there defendant asked Ronald how to get to the Los Angeles River. Ronald gave him the directions but does not remember what he told defendant because, to quote Ronald, "By that time I was drunk." Defendant proceeded to drive to the river and park. Defendant helped Ronald out of the car and took along a blanket. They walked down to the riverbed and lay on the blanket. It was there that defendant committed the act denounced by section 286 of the Penal Code. During this experience Ronald variously described his condition as follows: "I was unconscious and dazed . . . I was hazy" and "Everything was going around in circles" and that he did not have much control over his physical condition. He further testified that when defendant started getting on top of him he protested by saying, "No, no, no. . . ." Defendant drove Ronald back to "about two houses" from his home where he let him out. In the meantime defendant had secured Ronald's telephone number for the purpose of calling

---

[1] Defendant was granted probation but under section 1237, Penal Code. such order is a judgment for purposes of appeal.

[2] This case was not disposed of by the trial court until November 9, 1956. The delay was due to the introduction of certain proceedings relating to sexual psychopathy.

him the next evening to ascertain whether they could go out together, presumably on a double date with some girls. Defendant was to use the name ''Jerry.''

Ronald's mother testified he arrived home at 1:15 a. m. When she opened the door ''he fell on the floor;'' she thought he was sick and had vomited; ''he was moaning.'' At first it did not occur to her that he had been drinking; she thought he had been hurt. Because of that she called the police. Later she ''realized he was drunk.'' Ronald's mother also called Dr. Kronenberg, who arrived about 3 o'clock that morning. He testified that Ronald's ''breath smelled very heavily of alcohol;'' that ''his activity was that of an acutely intoxicated individual.'' When the doctor saw Ronald the next day ''he complained of mild rectal distress.'' Examination disclosed ''a small rectal fissure,'' that is, a ''small crack in . . . the lining of the rectum'' approximately a quarter of an inch in length. Such condition is ''usually'' of traumatic origin.

Officer Gautt of the Long Beach Police Department responded to the call of Ronald's mother. He reached the home in a few minutes; he found Ronald ''lying on the floor in the living room.'' He was rolling side to side and vomiting. ''He appeared to be in quite a drunken stupor.'' The officer ''could not get any intelligent conversation out of him.''

About 6 p. m. the following day defendant telephoned Ronald's home. Arrangements were made for defendant to pick him up at a particular corner later that evening. Police officers were near-by. Defendant drove up, opened the car door and Ronald talked with him a few minutes and told defendant he could not go with him that night. Defendant replied, ''Oh, yes, you can'' or something like that. At that point the police officers arrested defendant.

In seeking a reversal defendant contends that (1) Ronald was an accomplice; that in order to sustain the conviction his testimony must be corroborated under section 1111, Penal Code, and that there is no corroboration; (2) the court unduly limited the cross-examination of Ronald. There is no merit in either of these contentions.

■ ''To be an accomplice one must knowingly, voluntarily, and with common intent unite with the principal offender in the commission of the crime.'' (*People* v. *Lamb*, 134 Cal. App.2d 582, 585 [285 P.2d 941]; *People* v. *Shaw*, 17 Cal. 2d 778, 799 [112 P.2d 241].) This requires consent, which is defined in *People* v. *Dong Pok Yip*, 164 Cal. 143, at page

147 [127 P. 1031] as follows: "Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another. 'Consent' differs very materially from 'assent.' The former implies some positive action and always involves submission. The latter means mere passivity or submission, which does not include consent." In *People* v. *Westek,* 31 Cal.2d 469 [190 P.2d 9], which concerned a violation of the same section of the Penal Code here involved, the court pointed out (p. 475) that "the jury apparently accorded full credit to the boys' testimony that they did not 'willingly' join in the criminal acts, and so concluded that their part therein constituted an 'assent' rather than a 'consent.' Consequently the boys, by virtue of the evidence accepted by the jury as true, were not accomplices and corroboration of their testimony was not necessary." In *People* v. *Featherstone,* 67 Cal.App.2d 793 [155 P.2d 685], which also involved a violation of this same code section, the court observed (p. 796) that "If he (a fifteen-year-old boy) was not an accomplice, corroboration of his testimony was not necessary."

■ It was for the arbiter of the facts to determine whether Ronald consented to and wilfully joined in the criminal act defendant committed. Of course on appeal we must accept as established every fact in harmony with the judgment that finds adequate support in the evidence.

■ Applying these principles to the testimony herein recited, it is apparent that the evidence amply supports the implied finding that Ronald was inebriated to such an extent that he did not wilfully participate in the criminal act of defendant and that his part therein constituted an assent rather than consent. Ronald, therefore, was not an accomplice. (*People* v. *Westek, supra; People* v. *Dong Pok Yip, supra; People* v. *Lamb, supra.*) Consequently corroboration of his testimony was not required. (*People* v. *Westek, supra; People* v. *Featherstone, supra.*)

■ Defendant vigorously attacks the credibility of Ronald and argues that his testimony is untrustworthy. Those were matters for the determination of the trial court. Such arguments are of no assistance on appeal. We can neither reevaluate the credibility of the witness nor reweigh the evidence.

Conceding, *arguendo,* that Ronald was an accomplice and that his testimony must be corroborated, the record contains ample evidence to satisfy that requirement. ■ The basic

rule in this respect is stated in *People* v. *MacEwing*, 45 Cal.2d 218, at page 224 [288 P.2d 257] : ''The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth. [Citations.]'' ▉ Such corroboration ''may consist of testimony of the defendant and inferences therefrom as well as inferences from the circumstances surrounding the criminal transaction.'' (*People* v. *Wilson,* 25 Cal.2d 341, 347 [153 P.2d 720].)

▉ Defendant's testimony of the circumstances under which he met Ronald, their driving around together, their consumption of the alcoholic beverages, the replenishment of their supply of liquor and beer, their driving to a secluded spot where they got out of the car, taking with them the blanket, defendant's impression that Ronald vomited, the telephone call by defendant to Ronald's home the next evening, and the testimony of Dr. Kronenberg that his examination of Ronald disclosed ''a small rectal fissure,'' provide ample corroborative evidence. (See *People* v. *Walker*, 88 Cal. App.2d 265, 269 [198 P.2d 534].)

▉ Defendant complains of three rulings on evidence. These all relate to the cross-examination of Ronald:

1. He was asked this question by defendant's attorney:

''Q. Your parents were very angry with you because you had been drinking?'' Objection was made that the question called for a conclusion of the witness. The defense then suggested its propriety on the theory that it went to the bias or prejudice of Ronald. That the question did call for the conclusion of the witness is clear on its face. Furthermore, how the state of mind of Ronald's parents had any bearing on bias or prejudice on his part is not apparent. The court properly sustained the objection.

▉ 2. Defendant vainly argues that he was deprived of the right to impeach Ronald by showing that prior to the time they met Ronald had been filed on in juvenile court for stealing cars and running away. On this problem the reporter's transcript (p. 56, lines 20-25) reveals the following:

''Q. You were filed against for stealing cars?

''THE COURT: And running away?

''Q. And running away? A. Yes.

''Q. Didn't that offense of stealing cars take place prior to the time you met Mr. Olds? A. Yes.''

An objection that this was improper cross-examination was

ultimately sustained but there was no motion to strike the answer. It therefore remained for the court's consideration. *People* v. *Valencia,* 30 Cal.App.2d 126 [86 P.2d 122], is in point on this situation. At page 129 this court stated: "In the present case the question asked the witness was answered before an objection was made thereto, and a motion to strike the answer was not made. It therefore is clear that the question and answer were left for the consideration of the jury."

3. The final incident about which defendant complains had this setting: "Q. . . . didn't you tell Mr. Olds that you had been in trouble with the cops? A. No.

"Q. Isn't it a fact that you had been in trouble with officers prior to this occasion?

"Mr. JOYCE [Dep. D.A.] : Object to that as improper cross-examination.

"Mr. MARCUS: Part of the conversation, your Honor."

The ruling was obviously correct for two reasons: (1) the matter had been adequately covered by Ronald's prior testimony; (2) the answer could not be admissible as part of a conversation which, according to the testimony, never took place.

Defendant has apparently abandoned his claim that the trial court erred in denying his motion for dismissal under Penal Code, section 1203.4 (dealing with the dismissal of a criminal charge after probation has been granted and the conditions thereof have been fulfilled), since he has presented neither argument nor authority in support of his contention. Furthermore, that section has no relevance here, since defendant had not even been sentenced, much less placed on probation, at the time he made the motion.

The judgment and order are affirmed.

Moore, P. J., and Ashburn, J., concurred.