Filed 5/6/14  P. v. Vernon CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEMETRIUS JOSE VERNON,<br><br>    Defendant and Appellant. | B241169<br><br>(Los Angeles County<br>Super. Ct. No. TA121212) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald V. Skyers, Judge.  Affirmed.

Gary V. Cooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Demetrius Jose Vernon appeals his conviction of being a felon in possession of a firearm. (Pen. Code, former § 12021, subd. (a)(1).)[1] We affirm.

## FACTS AND PROCEDURE

On November 29, 2011, pursuant to a search warrant, Los Angeles County police officers entered the home of defendant's mother, Rosalind Dobbins, on North Northwood Avenue in Compton. Dobbins was the only person present at the home. The home consisted of a living room, front bedroom, a middle bedroom, and two back bedrooms, one of which connected to the middle bedroom via an open doorway. During the subsequent search, in the middle bedroom, Officer David Kraemer found a loaded .38-caliber revolver in a stack of clothing on a shelf in the closet. Also found in the closet were men's clothing, shoes, cologne, and deodorant. Some of the clothing in the bedroom belonged to defendant. The police found four rounds of .38-caliber ammunition on the floor of the bedroom. An additional 11 rounds were found on the floor in the doorway connecting the adjacent rear bedroom. In the rear bedroom, in the top drawer of a dresser, officers found a piece of mail addressed to defendant at the North Northwood Avenue address.

The officers arrested Dobbins and placed her in the back of a police car, wherein they video recorded her statement. Officers specifically asked who owned the gun and Dobbins responded that the gun, the clothes, and the middle bedroom belonged to defendant. Dobbins also stated that she previously had seen defendant with a different gun on the bed in the middle bedroom. She stated that she had told defendant that she did not want a handgun in her house and took the gun back from him. It is unclear whether the gun was removed from the house.

At trial, Dobbins recanted many of the statements she made during her interview. Dobbins testified that she was high on cocaine while she was interviewed, had not slept the night before, and was scared because she had answered the door holding a crack pipe and did not want to be held responsible for the gun. Dobbins had

---

[1]      Undesignated statutory citations are to the Penal Code.

2

a felony conviction. She stated that she did not know if the handgun was defendant's and that she had never seen him with a gun like the one found in the middle bedroom. She also testified that defendant did not live at the house with her, and she did not know why she told police that he did. She testified that she referred to the room as defendant's because it was his childhood room.

Dobbins testified that she often had guests over to the house and would rent out the back bedroom for partying and drug use. On a given night, seven or eight people might come over to use drugs. These guests would sometimes sleep in the rear bedroom. Dobbins' guests also had access to the middle bedroom. No one had slept in the middle bedroom in over a year, and it contained no bed. Dobbins' sons and grandchildren used the middle bedroom during daytime visits, including the day before the search. Both defendant and others kept clothes in the room.

At the time of the search, defendant was on parole and stayed at his aunt's home in Palmdale. There, defendant had his own room in which he kept shoes, a game system, clothes, and a television. Defendant had previously lived in the rear room of the house on North Northwood Avenue, but moved out in January of 2011. Dobbins' relatives had a restraining order against defendant, which at times disallowed him from being at her house. Defendant would visit his mother's house at least as often as every two weeks but did not stay the night. Detective Carter saw defendant at his mother's house three to five times in the six months prior to the search. On two separate occasions, upon being arrested, defendant represented living at his mother's home. Robert Saunders, Dobbins' son and defendant's brother, testified that he once saw a revolver belonging to one of his mother's guests in the trunk of a car parked outside Dobbins' house.

Defendant was charged with being a felon in possession of a firearm (former § 12021, subd. (a)(1)) and possession of ammunition (former § 12316, subd. (b)(1)). It was further alleged that defendant suffered a prior serious or violent felony or juvenile adjudication and that he did not remain free of prison custody for a period of five years after his prior offense. Defendant admitted his prior felony conviction. Defendant

3

was convicted as charged.  Defendant was sentenced to state prison for a total of three years eight months.

## DISCUSSION

Defendant argues (1) the trial court erred by not giving jury instructions on accomplice testimony regarding the testimony of Dobbins; (2) the evidence was insufficient to support the finding that he was a felon in possession of a firearm; (3) the trial court erred in denying defendant's motion to argue third party culpability; (4) the prosecution committed prosecutorial misconduct by providing late discovery; and (5) the trial court erred in declining to give jury instructions on late discovery.  We reject defendant's arguments.

### 1.  Alleged Accomplice Testimony

Defendant argues that Dobbins was an accomplice because she was a felon in possession of a firearm, and the trial court should have instructed jurors that the testimony of an accomplice must be viewed with caution.  We disagree.

An accomplice is an individual "who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."  (§ 1111)  "Put another way, '"an accomplice" is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of the crime.'"  (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1158.)

The offense charged against defendant was defendant's possession of a firearm given defendant's criminal history as a felon.  Dobbins did not fall within the definition of an accomplice.  She was not liable to the prosecution for defendant's possession of a firearm.  There was no evidence she united in the crime of defendant's possession of the firearm.  To the extent defendant is arguing that she could be liable for her own possession, that is a claim of third party liability, not accomplice liability.  Even if Dobbins possessed the firearm she was not an accomplice in the charged offense of defendant being a felon in possession of a firearm.  (Cf. *People v. Freytas* (1958) 157 Cal.App.2d 706, 714-15.)  Because there are no grounds upon which to

find Dobbins liable for the identical offense charged against defendant, the court was correct in not providing jury instructions on accomplice testimony.

## 2. *Alleged Insufficiency of the Evidence*

Defendant argues that there was insufficient evidence that he had constructive possession of the firearm and thus cannot be convicted of being a felon in possession of a firearm. We disagree.

"'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "Unless it is clearly shown that 'on no hypothesis whatever is there sufficient substantial evidence to support the verdict' the conviction will not be reversed. [Citation.]" (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162.)

There was substantial evidence that defendant possessed the firearm. Defendant's mother, Dobbins, stated to police officers that the firearm belonged to defendant. "The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*People v. Leigh* (1985) 168 Cal.App.3d 217, 221.) "To warrant the rejection by a reviewing court of statements given by a witness who has been believed by the trial court or the jury, there must exist either a physical impossibility that they are true, or it must be such as to shock the moral sense of the court; it must be inherently improbable and such inherent improbability must plainly appear." (*People v. Watts* (1999) 76 Cal.App.4th 1250, 1259.) In this case, Dobbins' statement was not inherently improbable, and the jury was entitled to rely on it despite the fact that she subsequently recanted.

Substantial circumstantial evidence that defendant had constructive possession of the firearm also supported the judgment. "Possession may be physical or constructive . . . ." (*People v. Williams* (2009) 170 Cal.App.4th 587, 625 (*Williams*).) Constructive possession is established when the defendant has dominion and control

5

over the firearm.  (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1084.)  "'Conviction is not precluded . . . if the defendant's right to exercise dominion and control over the place where the contraband was located is shared with another.  [Citation.]'" (*Williams, supra*, at p. 625.)

This case is similar to *Williams*, which held that evidence was sufficient to support a conviction for possession of firearms when a firearm was found in a room containing the defendant's possessions including mail addressed to the defendant at that address, ammunition was found in a closet containing clothes the defendant's size and in a bag that resembled the defendant's, and the defendant stated to police that he lived at the house.  (*Williams, supra*, 170 Cal.App.4th at pp. 596-597.)  Just as in *Williams*, here defendant stated to police that he lived at the address at which the gun was found and the statement was corroborated by mail addressed to defendant at that address.  This evidence—even without Dobbins' testimony—was sufficient to support the verdict.

The availability of contrary inferences does not require a different result.  The jury reasonably could have rejected evidence that others had greater access to the firearm and instead relied on the direct and circumstantial evidence implicating defendant.  It is not the function of the appellate court to reweigh the evidence. (*People v. Alexander* (2010) 49 Cal.4th 846, 883.)

Defendant's reliance upon *People v. Redrick* (1961) 55 Cal.2d. 282 is misplaced.  *Redrick* stands for the proposition that proof of opportunity to access a place where contraband is found, without more, is not enough to show unlawful possession of narcotics.  (*Id*. at p. 285.)  Here, assuming the principle is applicable to possession of a firearm, there was more than simply opportunity to access defendant's mother's residence.  The firearm was found in a residence claimed by defendant as his own, and in a room with his clothing, thereby fulfilling the "something more" *Redrick* requires.

### 3. *Claimed Error in Denying Evidence of Third Party Culpability*

Defendant contends that the trial court erred in denying his motion to offer evidence of third party culpability. Specifically, defendant claims he was precluded from arguing that Dobbins was responsible for the firearm. Defendant has not, however, supported this contention with a citation to the record showing that the motion was either made or denied. Instead, defendant contends that the existence of the motion may be inferred from the record. We disagree.

When reviewing an appeal we are limited to the record before us. "'"[I]t is defendant's burden on appeal to affirmatively demonstrate error . . . ."'" (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) Any ambiguities in the record will be resolved against the defendant. (*People v. Malabag* (1997) 51 Cal.App.4th 1419, 1422-1423, 1427.) Without a statement from the court directly denying or at least acknowledging the existence of the motion, defendant's argument fails to affirmatively demonstrate error.

### 4. *Alleged Prosecutorial Misconduct*

Defendant argues that the prosecution committed prosecutorial misconduct by turning over discovery late. Defendant demonstrates no discovery violation and therefore his derivative claim of misconduct necessarily fails.

**a. Background**

During the trial defense counsel objected to late discovery four times. First, defense counsel objected to recordings of jailhouse calls, which the defense had received a week and a day before trial. Some of the phone calls had taken place within 30 days prior to trial. The trial court granted defense counsel additional time to review the recordings. Defense counsel did not request any more time.

Defense counsel next objected to a piece of mail, which defense counsel had not seen prior to trial, and requested five minutes to review it before cross-examination. The court granted 15 minutes for the review. Defense counsel neither requested additional time nor argued she could not proceed with her cross-examination.

Defense counsel also objected to the prosecution's introduction of a booking sheet on the basis that it had not received the corresponding incident report, which itself was not introduced. Defense counsel requested five minutes to review the five-page document. The court granted a recess. Defense counsel did not request any additional time.

Lastly, defense counsel objected to the prosecutor playing a pre-search video of Dobbins' house. Defense counsel had watched the video before trial, but had not received her own copy. The court suggested, and defense counsel agreed, that delaying cross-examination of the witness, regarding the video, until the next day would be acceptable. Defense counsel never received a copy, but did have an opportunity to view the video prior to cross-examination.

Defense counsel requested an instruction on late discovery. During later discussions of jury instructions, the court denied the request stating, "[CALMCRIM No.] 306[2] is denied, and there's no need to get an instruction on that. If defense needs to argue that it was late and so forth, I'm not going to deny the permission to argue it."

---

**2**      CALCRIM No. 306 provides:

"Both the People and the defense must disclose their evidence to the other side before trial, within the time limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial.

"An attorney for the (People/defense) failed to disclose: _____ *<describe evidence that was not disclosed>* [within the legal time period].

"In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure.

"[However, the fact that the defendant's attorney failed to disclose evidence [within the legal time period] is not evidence that the defendant committed a crime.]

"*<Consider for multiple defendant cases>*

"[You must not consider the fact that an attorney for defendant _____ *<insert defendant's name>* failed to disclose evidence when you decide the charges against defendant[s] _____ *<insert names of other defendant[s]>*.]"

**B. Analysis**

The "'only substantive discovery mandated by the United States Constitution' is the disclosure of 'material exculpatory evidence' under *Brady v. Maryland* (1963) 373 U.S. 83." (*People v. Ashraf* (2007) 151 Cal.App.4th 1205, 1211.) ""For *Brady* purposes, evidence is favorable if it helps the defense or hurts the prosecution, as by impeaching a prosecution witness. [Citations.] Evidence is material if there is a reasonable probability its disclosure would have altered the trial result. [Citation.] Materiality includes consideration of the effect of the nondisclosure on defense investigations and trial strategies. [Citations.]"" (*People v. Maciel* (2013) 57 Cal.4th 482, 551.) None of the evidence alleged to be late was exculpatory, and defendant does not argue otherwise. As none of the evidence is a required disclosure under *Brady*, there was no federal constitutional violation. And defendant's derivative claim that the prosecutor committed misconduct by violating federal constitutional requirements necessarily fails.

State discovery requirements are codified in section 1054.1. Under section 1054.1, a prosecutor is required to disclose all statements made by the defendant, relevant evidence seized or obtained as a part of the investigation of the offenses charged, and relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies. Under section 1054.7, these disclosures must be made at least 30 days prior to the trial. If the information becomes known to or comes into the possession of a party within 30 days of trial, disclosure shall be made immediately.

Although defendant cites to section 1054.1, he fails to apply it to this case or show any specific violation. While he points out that he received certain evidence during trial, he fails to show the prosecutor had the evidence in advance and should have turned it over earlier. Defendant therefore fails to demonstrate the trial court erred in finding the discovery timely. Even assuming violation of state statutory

discovery requirements, we find no prejudice. The normal remedy for noncompliance with a discovery order is a continuance. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1131.) "It is defendant's burden to show that the failure to timely comply with any discovery order is prejudicial, and that a continuance [did] not . . . cure[] the harm." (*People v. Pinholster* (1992) 1 Cal.4th 865, 941, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.) Here, each instance when defense counsel objected to late discovery, defense counsel requested and was granted a continuance. At no point during the trial did defense counsel dispute the length of the continuance provided or suggest it inadequate. On appeal defendant does not articulate why the continuances were inadequate; nor does defendant offer how the late discovery altered his trial strategy or preparation.

## 5. *Jury Instruction on Late Discovery*

In a related argument, defendant contends the trial court erred by refusing to instruct the jury on late discovery with CALCRIM No. 306 as a remedy for the prosecutor's alleged discovery violations, and in doing so violated his due process rights. We disagree.

CALCRIM No. 306 instructs the jury that it may consider the effect, if any, of late disclosure of evidence. Instructing the jury that a party has failed to disclose information as required is a possible sanction for violating section 1054.1. (§ 1054.5, subd. (b).)[3] The decision whether to give such an instruction, is a matter within the trial court's discretion and is reviewed for an abuse of such discretion. (*People v. Curl* (2009) 46 Cal.4th 339, 357; *People v. Ayala* (2000) 23 Cal.4th 225, 299.) The remedy for a discovery violation should be no broader than necessary to guarantee a fair trial.

---

[3] Upon a showing that a party has not complied with section 1054.1 and that the moving party has complied with informal discovery procedures (a point not in dispute here), "a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order." (§ 1054.5, subd. (b).)

(*People v. Wimberly* (1992) 5 Cal.App.4th 773, 792-793.) As discussed previously, the trial court addressed the claimed discovery violations by allowing defense counsel additional time to review the challenged evidentiary items. This was sufficient in this case to provide the defense an opportunity to respond and defendant does not argue otherwise. In short, defendant has not established the trial court abused its discretion by failing to give the instruction on late discovery.

## DISPOSITION

The judgment is affirmed.


                                                        FLIER, J.

WE CONCUR:



BIGELOW, P. J.



RUBIN, J.


11