[Crim. No. 807.   Fourth Dist.   July 22, 1949.]

THE PEOPLE, Respondent, v. GIN HAUK JUE, Appellant.

J. M. Lopes for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged with and convicted by a jury of the crime of possession of opium in violation of section 11500 of the Health and Safety Code.

He lived by himself in room 29 at a hotel in Visalia. On the night of January 12, 1949, the chief of police, accompanied by narcotic agents, encountered defendant at an address on Center Street. They suspicioned him as being a·

user of opium. At the time he insisted he did not live in that city. He was taken to his hotel and the landlady pointed out his room (No. 29) to the officers. They obtained a key and found papers bearing defendant's name and also found on defendant's dresser two whiskey glasses containing a brown liquid which appeared to be an opium solution. Directly across the hall from defendant's room was the shower room and toilet which was used by defendant as well as other guests. Under the sink in that room, in the presence of defendant, the agents found a paper-wrapped package containing a spoon, a hypodermic syringe, and a small bindle which appeared to be opium. The chief reached up through an attic opening above the shower and found three additional packages. One contained opium pipes, another needles, and a third contained a brown substance which appeared to be opium. Defendant was asked about the several articles. He admitted that the solution on the dresser was his. Analysis showed it contained about 20 c.c. of Yen Shee Suey (described as a solution containing $6\frac{1}{2}$ milligrams of opium and alkaloids which contained about $\frac{2}{3}$ of an ounce of narcotics). According to the testimony of the officers, defendant admitted that the articles found under the sink in the shower belonged to him but denied ownership of the articles found in the attic. The bindle found under the sink contained "Sam Low" which was described as "Yen Shee" with water strained through it many times, and was generally used in hypodermic form. The spoon, cotton and pipe stems contained traces of opium alkaloids. The opium found in the attic was described as a "good . . . grade of opium." Defendant was asked by the officers as to the source of his supply. He answered that he was "afraid to tell." He denied that these hypodermic needles were his. The officers pulled up his sleeves and found that both his arms were "full of puncture marks" apparently made by hypodermic needles.

Defendant, testifying on his own behalf, admitted he deceived the officers by first stating that he did not live in Visalia; that he did so because he had not wanted anyone, including his landlady, to go into his room. He denied any knowledge of the presence of the material found in the shower room.

Defendant does not question the sufficiency of the evidence to support the conviction but presents two specifications of error: (1) that the deputy district attorney was guilty of

prejudicial misconduct; and (2) that the court prejudicially erred in its rulings on the admissibility of certain testimony.

While on the witness stand, defendant, on direct examination, denied stating to the officers that the articles found in the shower belonged to him, denied knowledge of the contents of the packages and containers discovered, and specifically stated that the liquid found on his dresser was given to him by a friend, for pain caused by an operation on his throat; that he set it there, forgot about it, and ''I didn't even touch it''; and that he didn't know what hypodermic needles were. On cross-examination the prosecutor then asked the defendant if it were not true that he was and had been since 1940, a user of narcotics. The court overruled the objection and refused to assign the remarks of the district attorney as prejudicial error. The defendant answered in the affirmative. It cannot be said, particularly in view of the testimony given by defendant on direct examination, that the ruling of the trial court was improper. (Pen. Code, § 1323; *People* v. *Noland*, 61 Cal.App.2d 364 [143 P.2d 86].)

During the direct examination of the chief of police, the prosecutor asked if he rolled up the defendant's sleeves and examined his arms. Objection was made to the questions propounded on this subject as being immaterial. In answering these general questions, the chief testified, over objections, that he found both arms were full of puncture marks, apparently made by hypodermic needles. Defendant's objection is that he was charged only with possession of narcotics and to inject this testimony into the case was highly prejudicial, citing *People* v. *Duvernay*, 43 Cal.App.2d 823 [111 P.2d 659]; and *People* v. *Gilliland*, 39 Cal.App.2d 250, 261 [103 P.2d 179].

This testimony was given after the chief had testified that he found the needles, opium and pipes in the opening to the attic, and after defendant denied ownership of them. He then rolled up defendant's sleeves and found evidence of the use of such needles. This evidence was clearly admissible as a circumstance showing ''possession'' by defendant of the opium there found by the officers. (*People* v. *Casas*, 77 Cal. App.2d 255 [175 P.2d 19].)

In *People* v. *Noland, supra*, it was held that in a prosecution for unlawful possession of narcotics, proof of the possession of a syringe and hypodermic needle, which are customarily used in the administration of the drug, and which

were found concealed with the drug, were relevant to the main issue of possession of the narcotics. Moreover, defendant, while on the witness stand, finally admitted that he had been a user of narcotics since 1940. It does not appear that he was erroneously prejudiced by the testimony produced. (*People* v. *Noland, supra*; *People* v. *Booth,* 72 Cal.App. 160, 166 [236 P. 987] ; *People* v. *Bennett,* 65 Cal. 267 [3 P. 868] ; *People* v. *Ives,* 17 Cal.2d 459, 465 [110 P.2d 408].)

Judgment and order affirmed.

Barnard, P. J., and Mussell, J., concurred.