[Crim. No. 3187. First Dist., Div. One. Apr. 16, 1956.]

THE PEOPLE, Respondent, v. HERMAN TORRES, Appellant.

Gladys Burke Schwatka, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant appeals from a jury conviction of two counts of violation of section 11500, Health and Safety Code: first count, unlawful possession of heroin; second count, unlawful possession of marijuana. He had admitted a prior conviction under the same section. He also appeals from an order denying his motion for new trial.

### QUESTIONS PRESENTED

Admission of evidence: (a) fresh needle marks; (b) evidence of prior acquaintanceship with the officers; (c) prior offense of possession of marijuana.

### EVIDENCE

June 7, 1955, about 10 p. m., Officers Hilliard and Myall of the Special Services Detail of the Oakland Police Department, while cruising in an unmarked police car, turned off Broadway into one-way 8th Street. They drove along the lane nearest the curb and saw defendant approaching them on the sidewalk about 125 feet away. When he was about 20 feet from them and apparently saw the officers, defendant quickened his pace and turned suddenly into a doorway which extended about 8 feet in from the sidewalk. The officers stopped opposite the doorway, next to some parked cars. Officer Myall turned his flashlight on defendant who was standing in the rear of the doorway facing a meter box located on the wall.

Myall saw defendant's left hand with a white object in it being raised above his head and over the top of the meter box, where the officer lost sight of the hand. It remained there not over five or six seconds and then defendant pulled it down empty. Officer Hilliard's view of defendant at first was blocked by Myall. Hilliard saw defendant's hand coming down empty from the meter box. The officers called defendant to their car. As Officer Hilliard started toward the meter box, defendant called to him, ''Ted, I want to talk to you, come back . . . Why don't you search me?'' Hilliard, however, went to the box. It had no top on it. Opening the sliding door he saw a white object stuck between the box and the side of the building. It was a white paper napkin containing a ''bindle'' of heroin and marijuana cigarettes. An inspection of defendant's left arm revealed fresh marks similar to those made by hypodermic needles. An inspection of his arm made three days prior revealed no such marks. Defendant denied that he had dropped the package in the box or knew anything about it or its contents. On the stand he testified that he went into the doorway because he was looking for his wife. Besides denying any connection with the package, he denied he had needle marks on his arm or even knew what heroin was.

(a) *Needle Marks.*

No contention is made as to the sufficiency of the evidence to support the verdict. Defendant contended that the evidence of the fresh needle marks on defendant's arm when arrested was inadmissible. ■ He contended, contrary to the usual contention made by a defendant in a narcotic case, that on a charge of possession of a narcotic, knowledge that the article possessed is a narcotic is not involved, that the mere fact of possession is sufficient to support a conviction. Hence, evidence to show he knew of the narcotic character of the objects was immaterial and prejudicial. This contention, however, was made prior to the decision in *People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40], which cited several of the cases in California holding that ''knowledge of the narcotic character of the article possessed is an essential ingredient of the offense charged'' (p. 160) and laid at rest any question upon the subject, if any question existed.* ■ Moreover,

*Counsel on appeal was appointed by this court. We feel constrained to state that her brief, filed before *People* v. *Winston, supra,* was decided, is an excellent one.

the evidence was admissible as tending to show that defendant had possession of the articles found in the meter box.

In *People* v. *Gin Hauk Jue,* 93 Cal.App.2d 72 [208 P.2d 717], the defendant was found in possession of hypodermic needles, opium pipes and opium. The defendant denied ownership to the officer. At the trial, after evidence of the possession and the defendant's denial was admitted, one of the officers testified that he had examined the defendant's arms and found evidence of the use of needles. On appeal the defendant made the same contention as defendant here, namely, that he was charged only with *possession* of the narcotic and that to inject this testimony which showed *use* of narcotics was highly prejudicial. The court held (p. 74): "This evidence was clearly admissible as a circumstance showing 'possession' by defendant of the opium there found by the officers."

(b) *Prior Acquaintanceship.*

Without objection the police officers testified to prior acquaintanceship with defendant. As to this, defendant properly states: "The defendant is not objecting to evidence showing acquaintanceship, since it tends logically to show that he ducked into the doorway to hide the narcotics after recognizing the officers. This shows guilty knowledge." Defendant then states that evidence was admitted "showing the reasons and basis for the acquaintanceship, i.e. prior arrests and investigations . . ." With the single exception hereafter discussed, defendant cites no portion of the record showing such evidence. We have carefully examined the record and failed to find any such evidence. For the purpose of showing that defendant was acquainted not only with the officers but with their car, and recognized them and it just before he dashed into the doorway, evidence was given that defendant had been in the same automobile with the officers six or seven times. At no time did the officers testify, nor were they asked anything concerning why defendant was in their automobile on these other occasions, nor anything concerning the "reasons and basis" for their acquaintanceship with him, nor the fact that defendant had been arrested on a prior occasion for possession of narcotics. Naturally the jury must have concluded that defendant's prior acquaintanceship with the officers and his prior presence in their car might have been and probably was due to an arrest, but the fact that such a conclusion would be drawn did not make the evidence inadmissible. As said in the above quotation from defendant's brief,

evidence showing acquaintanceship logically tended to show that "he ducked into the doorway to hide the narcotics after recognizing the officers." The fact that such evidence might show the commission of other offenses does not make the evidence inadmissible. "The general test of relevancy is whether the evidence tends logically, naturally, and by reasonable inference to establish any fact material for the People or to overcome any material matter sought to be proved by the defense. If it does, then the evidence is admissible whether or not it embraces the commission of another offense and whether the other crime be similar or dissimilar. (*People* v. *Peete*, 28 Cal.2d 306, 315 [169 P.2d 924].)" (*People* v. *Torres*, 98 Cal.App.2d 189, 192 [219 P.2d 480].)

 One of the officers was asked if he had been observing defendant for any length of time prior to the date of arrest. After he replied that he had, defendant's counsel stated: "I don't see what relevancy this has . . . THE COURT: Well, I will let it stand. It is in now." While this question should not have been permitted, there was no prejudice in allowing the answer to stand. The record is replete with testimony without objection that the officers had seen defendant numerous times, and had him in their automobile on several occasions. A juror would have to have been very blind to the evidence and very unrealistic not to have inferred from the admissible evidence that these police officers had been observing defendant for some time. Nevertheless, as stated before, that evidence was admissible to show defendant's acquaintance with the officers as explaining why he suddenly entered the doorway on seeing them. We find no error in the admission of this evidence.

(c) *Prior Offense of Possession.*

 On cross-examination of defendant, after defendant had denied knowing what heroin looked like, he was asked without objection if he knew what it looked like on January 9, 1950.* He denied such knowledge. He was then asked if he knew what marijuana looked like and if before he had seen cigarettes wrapped in brown paper such as those in evidence. He replied that he had and did. Then the district attorney asked "and that was what occurred on January 9, 1950, is

---

*The date of his conviction of violating section 11500, Health and Safety Code, which conviction he admitted on arraignment. Unfortunately the record does not show whether this conviction was for possession of heroin or of marijuana.

that right?" and he replied "yes." This is the only direct reference to a prior offense which the jury heard, if it rises to the dignity of being a prior offense. There was no suggestion of a conviction for such offense. Such evidence was admissible "as a circumstance tending to show that he falsified in disclaiming knowledge of the presence of the marijuana" (*People* v. *Torres, supra*, 98 Cal.App.2d at p. 192) as well as knowledge of the narcotic character of the objects found in his possession.

The order and judgment are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

