[Crim. No. 1563.    Fourth Dist.    Aug. 15, 1961.]

THE PEOPLE, Respondent, v. ARNOLD MENDIVIL, Appellant.

Arnold Mendivil, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

SHEPARD, J.—This is an appeal from a judgment of conviction of a violation of section 11500 of Health and Safety Code (possession of narcotics, heroin), after a full jury trial and a verdict of guilty. Defendant's notice of appeal is defective in form, but because it was filed timely and sufficiently indicates his intent to appeal, we will treat it as sufficient. He appeals "in propria persona." In response to our inquiry regarding points of error, trial counsel has stated, in a communication addressed to this court, that he knows of no prejudicial error in the trial, but gives points for possible consideration. The attorney general has reviewed the proceedings, and likewise is unable to discover prejudicial error. A full transcript of the trial proceedings was sent to defendant in June 1960. Another attorney who stated he had agreed to represent defendant on appeal, filed a request for further time

to examine the transcript of proceedings. On his request on behalf of defendant, the matter was continued from April 1960 to June 1960. However, no brief was ever filed. The cause was finally placed on the calendar for August 6, 1961.

## FACTS

In general substance, the facts shown by the record before us are as follows: January 20, 1960, Francis L. Ertey, an employee of the city of San Bernardino, saw three persons drive into the park where Ertey was working. Defendant was a passenger in the car. He got out alone and with one hand in his pocket, walked directly to a spot near a hedge in the park. He stooped down and "was messing with the ground." He scraped it and then smoothed it over with his hands, then went to a nearby restroom, returned to the car, and the three drove away. The other two occupants did not leave the car during this time. Ertey wrote down the car license number and a description of the car. He then went to the spot where defendant had been moving the ground and found, three or four inches under the surface, a package, which was later identified as containing crystalline bits of heroin and a needle, eyedropper, capsule and spoon. Testimony showed that this equipment was the "outfit" commonly used for intravenous injections of the narcotic heroin. Ertey called the police. Some hours later, defendant was arrested and interrogated. He at first denied possession, and also denied knowledge of the contents of the package. He further denied that he had ever been near the park at the time indicated. Defendant had a series of puncture marks making a "track" along the vein of his inner left arm.

Defendant claims that on the previous night while walking through the park, he heard three men talking near the spot. Some statement was made by one of them to the effect, "Leave it there for a couple days. It is valuable, but it will be more valuable in a few more days." He claimed he went back the next day to try to find it; that he could not do so and left on the assumption that the three men had not, in fact, left the article about which they were talking. He did not claim that the man pointed to the exact spot of burial, nor did he explain how he happened to choose that exact spot for his moving of the dirt without even a cursory examination of the area. Neither does he offer any explanation as to why he did not examine the ground even a few inches away before leaving. He claims he did not dig in the ground, but he did not offer

any explanation as to why he smoothed the ground if it was not dug up. When the officer returned him to the spot and in his presence asked Ertey who buried the package at the spot, Ertey pointed to defendant, but defendant made no denial or other comment.

## FALSEHOODS

Defendant, during his interrogation by the officers, made many statements which the jury were entitled to classify as false. Examples of these are his statements as to a line of puncture marks exactly following a vein on his inner left arm; his statements regarding the burning of these spots by him; that the doctor told the officers the defendant had never used narcotics; his original denial of ever having been near the park during the time involved, and his later admission on direct testimony that this was false; his original story of seeing a narcotics raid at the Francis Swift home, seeing someone running and throwing "it" "you know what I mean," that he picked "it" up and took off; his statement that he burned the "track" of puncture marks along the vein of his arm because of "fear" of Police Lieutenant Alters. These statements were all contradicted by circumstances, pictures, contradictory testimony or circumstances or direct admissions of falsity in defendant's own testimony during trial. ▮ False statements may not, of course, be used to independently supply missing elements of the corpus delicti. (*People* v. *Amaya,* 40 Cal.2d 70, 75 [2] [251 P.2d 324].) However, they may be used to corroborate such proof and to connect defendant with the crime, and under some circumstances "Such falsifications cogently evidence consciousness of guilt and suggest that there is no honest explanation for incriminating circumstances, and thus are admissions of guilt." (*People* v. *Osslo,* 50 Cal.2d 75, 93 [4] [323 P.2d 397].)

▮ The impeachment of defendant, as a witness, by proof of conviction of a felony, was another circumstance affecting his credibility. (*People* v. *Shaw,* 115 Cal.App.2d 597, 604 [7] [252 P.2d 670].) While such impeachment did not, of itself, establish the affirmative fact of falsehood, it was a circumstance to be weighed by the jury in determining whether defendant's testimony was credible under all the circumstances.

## PUNCTURE MARKS

▮ It is impossible for any person to call to mind the innumerable bits of circumstance which may convince an un-

prejudiced and reasonable mind of the existence of a fact. Clearly, however, the fact of puncture marks forming a "track" along the vein of the inner arm is a proper factor for consideration, along with other circumstances, when the question of possession of heroin is at issue. We think that under all the circumstances in the case at bar, the evidence of such "track" was properly received for the special purpose of showing knowledge of the narcotic, to which purpose the trial court restricted it. (*People* v. *Gin Hauk Jue*, 93 Cal.App.2d 72, 74 [2] [208 P.2d 717] ; *People* v. *Torres*, 140 Cal.App.2d 751, 754 [2] [295 P.2d 904] ; *People* v. *Lepur*, 175 Cal.App.2d 798, 801 [2] [346 P.2d 914].)

### ARREST AND INTERROGATION OF DEFENDANT

■ Defendant's arrest and the failure of the officer to immediately inform him of what he was charged with affords no reason to reverse the judgment in this case. No complaint was made to the trial court in this regard, and there is nothing whatever in the record to indicate that defendant was in any way hampered thereby in his defense. The record shows quite clearly that he did learn of the cause of his arrest and the charge under which he was held, within a short time after arrest, not exceeding two or three hours. (*People* v. *Garcia*, 174 Cal.App.2d 525, 529-530 [1-2] [344 P.2d 855], and authorities there cited.)

### SUFFICIENCY OF THE EVIDENCE

■ The actions of defendant in driving up to a point in the park near the hedge, in going directly to the spot where the narcotics kit was buried; in moving the dirt at that particular spot without any survey or search of the immediately adjacent area; in carefully smoothing the ground after disturbing it, were sufficient to reasonably cause the jury to infer that at that spot he did dig in the ground, bury therein something he wished to secrete, and that he knew what he buried. This reasonably and logically supports the inference that defendant had physical control of the narcotics, had not abandoned it to anyone else, and that no other person had possession. Such constructive possession meets the requirements of the statute. (*People* v. *Cuellar*, 110 Cal.App.2d 273, 278 [12-13] [242 P.2d 694], and authorities there cited.) Defendant's contradictory statements, his falsehoods, and the weakness of his explanation could have only the effect of corroborating and strengthening the inference thus arrived at. The sum total of these and the other details of the evidence shown by the record, convinces

us that the evidence was sufficient to support the verdict of the jury.

We have examined the entire record, and it appears therefrom that defendant's counsel and the trial judge meticulously guarded the rights of defendant, and that a full and fair trial was had. We find no prejudicial error.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.