[Crim. No. 12535. Second Dist., Div. One. Dec. 13, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RUSSELL W. SCHUMACHER, Defendant and Appellant.

Russell W. Schumacher, in pro. per., and Joseph C. Battaglia, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—On March 1, 1966, a jury found defendant guilty (No. 313918) of possession of heroin on November 5, 1965 (§ 11500, Health & Saf. Code); of a subsequent sale of

heroin on December 30, 1965 (§ 11501, Health & Saf. Code)
he was convicted by a jury on April 5, 1966 (No. 317725).
Tried separately, the two cases were consolidated on appeal.
Before us are appeals from both judgments and order deny-
ing motion for a new trial. The purported appeal from the
order is dismissed (§ 1237, subd. 2, Pen. Code).

### First Case (No. 313918)

Narcotic Officers Waers and Hill had information that
there were two outstanding traffic warrants for defendant's
arrest. On November 5, 1965, around 12:30 p.m., the officers,
riding in an unmarked police car, saw defendant on crutches
enter a liquor store on Windward Avenue and come out in a
few minutes; he was out of their sight only one minute while
in the store. They approached him on the street, identified
themselves and asked his name; he answered, "Russell Schu-
macher." They asked for identification, and as defendant
reached into his left rear pants pocket Officer Waers observed
red and blue balloons cupped inside his hand. He had seen
many such balloons and knew their common use by addicts
for carrying heroin; thus, when he saw the balloons he be-
lieved that defendant was carrying a narcotic. He asked de-
fendant, "What do you have in your hand?" and, with
defendant's reply, "Nothing," the officer reached for de-
fendant's left hand and removed therefrom three toy bal-
loons—one torn, and the red and blue balloons were rolled
and tied as if containing a substance. Believing the sub-
stance to be heroin, the officer poked a hole in the balloons
and saw what appeared to him to be heroin; he then ar-
rested defendant for possession of heroin and advised him
of his constitutional rights. In defendant's rear left pocket he
found multicolored balloons in cellophane packages, and in
his sweater pocket a holder commonly used to carry a hypo-
dermic needle. Officer Waers asked him where he got the red
and blue balloons; defendant said that a guy he knew only as
"Joe" gave them to him to hold and was to come by later to
pick them up. Referring to the hypodermic needle holder, the
officer asked where his "fit" (outfit) and needle were; de-
fendant said nothing. Asked if he was "hooked," defendant
said no, that he just uses once in a while. An examination of
his right arm disclosed what appeared to be three to ten
fresh hypodermic needle marks inside the elbow; defendant
said he just used a little bit, that he wasn't hooked.

Defendant testified that he was on crutches as a result of an

injury; thirty seconds or a minute before the officers approached him, a "fellow, what I call Joe . . . or Slim" whom he had known for six months, gave him the balloons and said "hold this" for a minute and he'd be right back; "Joe" disappeared and he hasn't seen him since; he knew he had some traffic warrants outstanding; he had no idea what the balloons were and had never seen similar objects; he did not know what heroin looked like (at time of trial) or at the time of his arrest (November 5, 1965).

On rebuttal, to impeach defendant's testimony that he did not know what heroin looked like, the People presented the testimony of Officer Cardenas to the effect that less than two months after his arrest defendant sold him heroin on December 30, 1965, around 4:25 p.m., right across the street on Windward where he was arrested on November 5, 1965 (this is the second case against defendant—No. 317725).

In surrebuttal defendant and his mother testified he was at his mother's house in Manhattan Beach at 4:25 p.m. on December 30, 1965.

*Second Case (No. 317725)*

On December 30, 1965, undercover Officer Cardenas and a third person entered a bar on Windward around 4:25 p.m.; there defendant approached them and they had a conversation in which defendant said he could "score" and asked if they had a car. Officer Cardenas said he did, and defendant suggested they "go see this guy I know." The officer drove them to Brooks Street where he handed defendant a $10 bill; defendant left, returned in five minutes and handed the officer a multicolored bindle containing heroin. Defendant was using a cane.

For the purpose of showing that defendant knew what heroin was on December 30, 1965, evidence that he had heroin in his possession on November 5, 1965 (No. 313918) was presented to the jury.

Defendant and his mother offered the same alibi he gave on surrebuttal in the first case.

█ In connection with case No. 313918, appellant contends that it was a denial of right to counsel for the trial judge to refuse his first request for continuance to permit him to consult with private counsel. On November 26, 1965, almost three months prior to the date set for trial, a public defender was appointed to represent defendant. No request or motion

for continuance was made until the day of trial, February 21, 1966, at which time an unidentified attorney, not defendant's attorney of record, advised the judge "there will be a substitution," stating, "I would request a continuance, inasmuch as I have just been retained in the matter, . . ." It developed that defendant waited until three days before trial "to want to hire private counsel"; the unnamed attorney said defendant had been on crutches and unable to earn funds with which to retain him.

No request for continuance was made by either defendant or the deputy public defender, defendant's attorney of record; the latter was prepared and ready to proceed to trial. Both defendant and the public defender remained silent. The attorney who made the request did not represent defendant, and at no time identified himself to the court. The judge stated that defendant had since November 26, 1965, to arrange for counsel and prepare the case for trial; "last minute substitutions only for the purpose of gaining a continuance is [sic] frowned upon mightily"; and since the public defender is ready for trial, the witnesses should not be inconvenienced and made to lose a day's pay simply because defendant waited until the last minute. The request was denied on the ground that defendant made "no proper showing"; the record supports the denial.

Contrary to appellant's present claim that the case was "complicated" and even the public defender did not have adequate time to prepare for trial, the record shows that the facts arose out of simple direct testimony; and that the public defender was prepared and ready to proceed to trial, cross-examined the People's witnesses at length, interposed numerous objections and made various motions arguing the same, offered a vigorous defense and successfully sought a continuance to subpoena additional witnesses. If defendant was dissatisfied with his representation, he made no mention of it on the trial level and, in fact, without objection permitted the same deputy public defender to represent him several months later in the second case (No. 317725).

In both cases defendant was advised of his *Dorado* [62 Cal.2d 338 (42 Cal.Rptr. 169, 398 P.2d 361)] rights, but was not told in accord with *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], that if he did not have funds to employ an attorney one would be appointed to represent him. However, *Miranda*, decided June 13, 1966, has only prospective application (*Johnson* v. *New Jersey*, 384

U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *People* v. *Rollins,* 65 Cal.2d 681, 691 [56 Cal.Rptr. 293, 423 P.2d 221]; *People* v. *Rivers,* 66 Cal.2d 1000, 1003 [59 Cal.Rptr. 851, 429 P.2d 171]) and is not here applicable, for the trial of the first case terminated March 1, 1966, and the second, April 5, 1966.

■ Appellant's argument that there was no probable cause for the first arrest thus the subsequent search and seizure were illegal, is predicated on his contention that he was not a narcotic suspect and "cannot be arrested merely because he has balloons in his possession," citing *People* v. *Garrett,* 237 Cal.App.2d 701 [47 Cal.Rptr. 194]. Knowing that there were two outstanding traffic warrants for defendant's arrest, the officers on the street stopped defendant, whom obviously they knew, identified themselves and, in what was proper and normal procedure, asked defendant to verify his identification. Observing the balloons when defendant reached for his pocket and receiving a denial that he had anything in his hand, the officer believed that defendant was committing a felony, i.e., possession of heroin. Unlike the facts in *Garrett, supra,* the officers had the right to approach defendant and arrest him on the two outstanding traffic warrants; and if, as a natural outgrowth of the initial approach, the facts known to the officers warranted them, as reasonable persons, to believe that defendant was committing a felony, they not only had the right but the duty as police officers to arrest him. (§ 836, Pen. Code.) A search incidental to a lawful arrest is valid. (*People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889]; *People* v. *Ross,* 67 Cal.2d 64, 69 [60 Cal.Rptr. 254, 429 P.2d 606].) ■ While the officer removed the balloons from defendant's hand and pierced them finding the heroin before defendant was arrested, a search may precede an arrest as long as the search is supported by evidence sufficient to constitute probable cause apart from that discovered in the search. (*People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531].)

■ Arguing that Officer Cardenas' rebuttal testimony that defendant subsequently sold him heroin on December 30, 1965, was part of the prosecution's case in chief, and not proper rebuttal testimony, he claims prejudice because, used on rebuttal, it was highlighted to the jury. On cross-examination defendant testified that he did not then "know what heroin look[ed] like" and didn't "know what heroin looked like" on November 5, 1965; when the defense rested the

prosecutor told the court that he wanted to offer Cardenas' testimony to rebut this.[1]

It is apparent from the record that the rebuttal testimony was offered not to prove any element of possession or knowledge which should have been proved in chief, but simply to impeach him. ▮ In addition, it is clear that in its case in chief the prosecution sufficiently established the element of knowledge of the narcotic nature of the article possessed. (*People* v. *Winston*, 46 Cal.2d 151, 161 [293 P.2d 40].)

▮ ''Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic. (*People* v. *Redrick*, 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) The foregoing elements may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. (*People* v. *Jackson*, 198 Cal.App.2d 698, 704 [18 Cal.Rptr. 214].)'' (*People* v. *Groom*, 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Gory*, 28 Cal.2d 450, 456 [170 P.2d 433]; *People* v. *Aguilar*, 223 Cal.App.2d 119, 123 [35 Cal.Rptr. 516].)

▮ That defendant had knowledge that the material in the balloons was heroin was established by the prosecution in chief by evidence of fresh needle marks (three to ten) in the inner elbow of defendant's right arm (*People* v. *Torres*, 140 Cal. App.2d 751, 753 [295 P.2d 904]; *People* v. *Mendivil*, 194 Cal. App.2d 758, 761-762 [15 Cal.Rptr. 303]); his statement to the officers that he was not ''hooked'' but just uses once in a while, ''just a little bit''; his possession of a hypodermic needle holder; his denial that he had anything in his hand; his statement (in the face of the officer's testimony that he was out of sight only one minute, while in the liquor store) that someone named Joe, thirty seconds or a minute prior to his arrest, on the street gave him the balloons to hold; and his possession of multicolored balloons commonly used by addicts for carrying heroin. ▮ All surrounding facts and circumstances may be considered in determining knowing possession of narcotics (*People* v. *Flores*, 162 Cal.App.2d 222, 224 [327 P.2d 932]), including defendant's conduct, admissions, con-

---

[1] ''I propose at this time to introduce, by way of rebuttal, testimony of an undercover officer who purchased heroin from the defendant on a date approximately, I think it was December 30, 1965. The purpose of this testimony is to show that the defendant had knowledge and knew what heroin was, to rebut his testimony that he does not know what heroin looks like, and did not know at the time.''

trary statements or explanations (which alone are frequently sufficient). (*People* v. *Stanciell*, 121 Cal.App.2d 798, 799 [264 P.2d 576].) Before resting, the prosecution put on a clear and convincing case of possession of heroin; evidence of the subsequent sale by defendant certainly was not essential to the case in chief and there was no reason then to offer it. That which made it necessary and proper was defendant's denial on the stand that he knew what heroin looked like. (*People* v. *Lindsey*, 90 Cal.App.2d 558, 566 [203 P.2d 572]; *People* v. *Waggoner*, 195 Cal.App.2d 385, 387 [15 Cal.Rptr. 687].) "While it is improper for the prosecutor to withhold evidence which is properly a part of his case in chief and offer it after the defense has closed its case, such evidence may be used by the prosecutor where it comes within the rules of impeachment and may be admitted on rebuttal to meet evidence upon a point put into dispute by the testimony for the defense. [Citations.]" (*People* v. *Harrison*, 59 Cal. 2d 622, 629 [30 Cal.Rptr. 841, 381 P.2d 665].) And before the rebuttal testimony the trial court carefully instructed the jury that it was being received "for a limited purpose only";[2] after all evidence was in, on its own motion, the court gave another similar instruction.

 Appellant says that after rebuttal he was not given sufficient time in which to obtain witnesses, in particular, the police informant involved in the December 30 sale. Defendant requested a continuance in order to secure witnesses to prove an alibi; they were to testify he was at his mother's house on December 30. A colloquy followed and the judge said that a reasonable time within which defendant could obtain his mother and one Wilhelm, who lived in his mother's house, would be from then (2:30 p.m.) to the following afternoon, reminding him that there was a jury to be considered.[3] De-

---

[2] "Ladies and gentlemen of the jury, I have been informed out of your hearing concerning the nature of the testimony that may come from this witness, and I must now explain to you that this testimony, while receivable, is receivable for a limited purpose. The defendant must be shown by the prosecution not only to have had possession of heroin, but that he knew of the narcotic characteristic of the property at the time he possessed it.

"The defendant, when on the stand, was asked if he knew concerning the characteristics of heroin, if he knew what he allegedly had in his hand on this evening, and if he knew what heroin looked like, and he denied those things.

"This testimony is given solely for the purpose of contradicting that testimony on the part of the defendant, and may not be received or considered by you for any other purpose."

[3] "I think you ought to be given a reasonable period of time to get both of them, and that ought to be by tomorrow afternoon. I don't want

fense counsel requested more time in which to find the informant; his request was granted and the trial was continued for five days (February 23 to February 28). On February 28, defendant asked for an additional week because his subpoenas had been returned by the sheriff as received too late for service, However, defendant's mother was in court and the judge, reminding defendant that the other witness lived in her house, said, "I have given you reasonable opportunity, counsel, and I gain the impression that not too much effort has been expended since last Wednesday to get witnesses in. . . ." On surrebuttal defendant and his mother testified; defendant's mother was also his alibi witness in the second trial a month later. And in the second case defendant, with in excess of thirty days in which to obtain additional witnesses, presented nothing more than he did in surrebuttal in the first case. While it appears that the man who lived at the home of defendant's mother left for Vietnam, the informer was not brought in by defendant in the second trial. The "surprise" element of the rebuttal testimony is nonexistent; defendant knew the nature of the second charge against him, thus, if he chose to testify that he did not know what heroin looked like he well could have expected that he would be impeached by proof of the subsequent sale.

 Finally, the prosecution is accused of unfair tactics —introducing evidence of the subsequent (December 30) act "to prove knowledge" in the first case, then using evidence of the first offense (November 5, 1965) to prove knowledge in the second case. While they were not tried together, the two cases well could have been. (§ 954, Pen. Code.) The assertion that if the prosecution had tried both cases together it could not have gotten a conviction in either, is unsupported in the records before us. The evidence in the first case, without proof of the subsequent sale, was sufficient to establish possession; testimony of the December 30 sale was not offered, as claimed by appellant, "to prove knowledge" but to rebut his denials that he knew what heroin looked like. It is obvious from the People's case that the rebuttal testimony would never have been offered had it not been for the defense. Appellant's claim that there was a "grave question of identity" in the second case, is wholly untrue for he was positively identified in court by Officer Cardenas on two separate occasions. This

to stretch this out unduly. I want to give you a time to get witnesses. But I am mindful also of the fact that this is a jury trial. And I don't want to put these jurors over any unreasonable period of time.''

eyewitness identification testimony leaves no room for doubt— they were in each other's presence at least ten minutes; defendant was introduced as "Russ" (Russell Schumacher); defendant walked with a cane and mentioned an accident (later defendant verified he had used a cane since December 28); on December 30, immediately after the transaction, the officer wrote his description of defendant which matched that of defendant in court; the officer identified him at Valley Station on January 19, 1966, when defendant was arrested the second time and identified defendant's mug shot on January 25, 1966, at Central Division.

It was proper to offer in rebuttal in the first case evidence of the subsequent crime. (*People* v. *Henderson*, 60 Cal.2d 482, 494-495 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Woods*, 35 Cal.2d 504, 509 [218 P.2d 981]; *People* v. *Bean*, 149 Cal.App. 2d 299, 302 [308 P.2d 27].) As to the evidence in both cases, inasmuch as it was proper, the same was admissible whether the other act was prior or subsequent (*People* v. *Coefield*, 37 Cal.2d 864, 870 [236 P.2d 570]; *People* v. *Houston*, 219 Cal. App.2d 187, 192 [33 Cal.Rptr. 26]); the element of time affects only the weight of the evidence rather than its admissibility. (*People* v. *Ing*, 65 Cal.2d 603, 612 [55 Cal.Rptr. 902, 422 P.2d 590].)

The judgments are affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 11, 1968, and appellant's petition for a hearing by the Supreme Court was denied February 21, 1968. Peters, J., was of the opinion that the petition should be granted.