Filed 11/21/13  In re M.G. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B245218 (Super. Ct. No. 1395362) (Santa Barbara County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>M.G.,<br><br>    Defendant and Appellant. | |

M.G. appeals a juvenile court judgment which sustained the allegations of an amended juvenile wardship petition (Welf. & Inst. Code, § 602) that he possessed a controlled substance--Vicodin.  (Health & Saf. Code, § 11350, subd. (a).)  We conclude, among other things, that substantial evidence supports the juvenile court's findings and judgment.  We affirm.

FACTS

On April 11, 2012, M.G.'s father became concerned because M.G. had been "out all night" and did not come home.  He suspected M.G. had been using drugs.  After M.G. came home, his father confronted him and asked "if he had ingested a drug."  M.G. handed him a pill and said that "he would take them to feel more tranquil."  The pill was Vicodin, a controlled substance.

Police Officer Nathan Totorica came to the home to investigate a report that M.G. was a missing person. He spoke to M.G.'s mother. She told him she was concerned about M.G.'s "drug use" and she handed him the Vicodin pill.

At trial, Totorica testified that he asked M.G. where "he got the pill." M.G. responded he obtained it from a friend. He would not name that person. M.G. told Totorica that he planned to take the pill "at a later time." He said he had "smoked methamphetamine on several occasions." Totorica asked M.G. "if he knew it was wrong to possess the pill." M.G. said, "Yes."

M.G. testified he told Totorica that a friend gave him the pill. He told that false story because Totorica did not believe him when he said he found the pill under a bridge--a place "where everybody smokes marijuana and everything." He did not tell Totorica that he "had smoked meth." He told him he smoked marijuana. M.G. testified he "could not wait to show" the pill to his father because he "didn't know what kind of pill" it was.

The trial court sustained the petition. It found, among other things, that: 1) M.G. said "he knew it was wrong to possess the pill," 2) he knew the narcotic "character" of the pill because he said "a friend gave it to him," and 3) he knew that the effect of the drug would make him tranquil.

## DISCUSSION

### Substantial Evidence

M.G. contends there is insufficient evidence to support the finding that he knowingly possessed a controlled substance.[1] We disagree.

"The role of an appellate court in reviewing the sufficiency of the evidence is limited." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.) We review the record in the light "most favorable to the judgment." (*Ibid.*) We do not weigh the evidence or decide the credibility of the witnesses. (*People v. Belcher* (1961) 189 Cal.App.2d 404, 407.)

---

[1] M.G. has requested that we take judicial notice of matters that were not presented to the trial court and are not part of the record. We deny the request. (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 763, fn. 3.)

"The essential elements of unlawful possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.'" (*People v. Martin* (2001) 25 Cal.4th 1180, 1184.) The knowledge element requires evidence the defendant had "an awareness of" the "physical presence and narcotic character" of the drug. (*People v. Low* (2010) 49 Cal.4th 372, 386; *People v. Winston* (1956) 46 Cal.2d 151, 158.) "'The defendant need not know the chemical name or the precise chemical nature of the substance.'" (*People v. Romero* (1997) 55 Cal.App.4th 147, 154.) "All surrounding facts and circumstances may be considered in determining knowing possession of narcotics [citation], including defendant's conduct, admissions, contrary statements or explanations . . . ." (*People v. Schumacher* (1967) 256 Cal.App.2d 858, 865-866.)

M.G. concedes that there is sufficient evidence that he knew "he was in possession of a pill," that "he had control over it," and that "the pill was a usable quantity." He claims there was no evidence that he "knew that possession of the pill was prohibited due to its nature as a scheduled controlled substance." He argues the People's witnesses were impeached and the trial court should have drawn inferences favorable to him. But we do not decide credibility, and the issue is not whether some evidence supports M.G., it is whether substantial evidence supports the judgment.

The People contend there are facts from which the trial court could reasonably infer M.G. knew he possessed a controlled narcotic substance--the Vicodin pill. We agree. M.G. knew the effect the drug would have if he swallowed it. He told his father that he would take the pill "to feel more tranquil." Vicodin is a "prescription painkiller" that produces a "sedative" effect. (*People v. Jennings* (2010) 50 Cal.4th 616, 633.) His knowledge of the pill's effect supports the finding that he had "knowledge of the object's narcotic character." (*People v. Winston*, *supra*, 46 Cal.2d. at p. 158.)

M.G.'s conduct was highly incriminating. M.G. produced the pill after his father confronted him and asked if he had "ingested" or "was using any drugs." The trial

3

court could reasonably infer that producing the pill was the affirmative response to that question, and the pill identified the drug he had been using.

M.G. testified he did not know what the pill was. But his testimony is not dispositive on the substantial evidence issue. M.G. told the police that "he had planned to take the pill." The People claim that "[t]he notion that someone would voluntarily take a pill without knowing what it was strains credulity." The trial court could reasonably consider this in finding M.G. was not credible.

There is also evidence to support a reasonable inference that M.G. knew his conduct was unlawful. M.G. made an incriminating admission. He told the police that "he knew it was wrong to possess the pill." M.G. claims there are conflicting inferences from this statement. But we must draw the inferences supporting the judgment. From M.G.'s statements to his father and the police, the trial court could reasonably infer he knew possessing the pill was unlawful. Possession of the pill, with the knowledge of its effect and illegality, coupled with the intent to use it, constitutes "substantial evidence that the possessor was aware of its narcotic character." (*People v. Magana* (1979) 95 Cal.App.3d 453, 464; *People v. White* (1970) 11 Cal.App.3d 390, 396.)

In addition, evidence of "prior use of narcotics" is admissible to prove the defendant's "knowledge of the narcotic character of the article possessed." (*People v. Hancock* (1957) 156 Cal.App.2d 305, 312.) The trial court could find that M.G.'s claims about his ignorance about the substance were refuted by evidence showing his history of drug use. M.G. was young, but he was no stranger to drugs. He had used methamphetamine. He admitted to police he had taken it "on several occasions." M.G. testified that he had smoked marijuana. He also was taking Concerta--a prescription medication. His "prior use of narcotics" supports the trial court's finding about his "knowledge of the narcotic character of" the pill. (*Hancock*, at p. 312.) His use of other drugs was also admissible on the knowledge element. (*People v. Pettyjohn* (1959) 172 Cal.App.2d 188, 198 [defendant's possession of codeine, demorol and morphine was admissible to prove his "knowledge of the narcotic nature" of the drugs he was charged with possessing--marijuana and amidone].)

4

The trial court also could consider evidence that M.G. and his friends were drug users. M.G.'s mother told police that she had "concerns about his drug use" and his friends "were involved in drug use." One of M.G.'s friends committed suicide under the influence of a drug. M.G. told police a friend gave him the pill. He also testified he obtained the pill in an area frequented by known drug users. He said it was a place "where everybody smokes marijuana and everything." (*People v. Leyva* (1960) 187 Cal.App.2d 249, 254 [defendant's association with "known narcotics users" was admissible to prove his knowledge about the drug].)

Moreover, "knowledge of the character of dangerous drugs or narcotics may be shown by acts or declarations of the accused which indicate a 'consciousness of guilt.'" (*People v. Williams* (1971) 5 Cal.3d 211, 216.) False statements to the police are admissible to show a consciousness of guilt. (*People v. Kimble* (1988) 44 Cal.3d 480, 496.) M.G. admitted he lied to the police. He initially said he found the pill near a bridge, but he later said he received it from a friend. At trial, he said the story about receiving the pill from a friend was false. The court could reasonably find M.G. received the pill from a friend at the area frequented by known drug users. It could find his admitted lie to police showed his consciousness of guilt which supported the evidence showing his "knowledge of the character of the" pill. (*Williams*, at p. 216.) The evidence is sufficient.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

5

Rick S. Brown, Judge

Superior Court County of Santa Barbara

_____

Lori E. Kantor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Jonathan J. Kline, Deputy Attorney General, for Plaintiff and Respondent.